CAIN v LANSING HOUSING COMMISSION

Docket No. 204228. Submitted November 18, 1998, at Lansing. Decided May 21, 1999, at 9:10 A.M. Leave to appeal sought.

Mary Cain brought an action in the Ingham Circuit Court against the Lansing Housing Commission, alleging that as a result of the defendant's negligence, she slipped and fell on an ice- and snow-covered sidewalk in 1995 in front of apartments owned and operated by the defendant. In 1969, the defendant, in order to obtain federal funds, had entered into a contract with the United States Department of Housing and Urban Development (HUD) prohibiting the defendant from raising governmental immunity in defense of a tort action. In 1994, the defendant's liability insurer had received a memorandum from HUD informing it that HUD would no longer require the waiver of governmental immunity. The court, Thomas L. Brown, J., granted summary disposition for the defendant, ruling that the action was barred by governmental immunity. The plaintiff appealed.

The Court of Appeals *held*:

A waiver of governmental immunity may be valid when the authority to contractually waive immunity is necessarily inferred from the language of a statute. MCL 125.696; MSA 5.3056 authorizes municipal housing commissions like the defendant to do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government. One of the things necessary for the defendant to secure HUD funds is the acceptance of all contract terms HUD deems appropriate. From 1969 to 1994, authority for the defendant's waiver of governmental immunity pursuant to the terms of its contract with HUD was necessarily inferred from MCL 125.696; MSA 5.3056. However, once HUD stopped requiring the waiver of immunity, the defendant lost the implied authority to waive immunity. The trial court therefore did not err in determining that the defendant could raise governmental immunity as a defense to the plaintiff's action.

Affirmed.

KELLY, J., dissenting, stated that the HUD memorandum that dropped the requirement of waiver of governmental immunity was permissive, not mandatory, and that because the defendant took no

action to take advantage of that permission, waiver of immunity under the terms of the HUD contract remained in effect. The order granting summary disposition for the defendant should be reversed.

Governmental Immunity — Contractual Waiver — Implied Statutory Authority.

A waiver of governmental immunity may be valid when the authority to contractually waive immunity is necessarily inferred from the language of a statute.

*Church, Kritselis & Wyble* (by *James M. Hofer*), for the plaintiff.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Patrick D. Filbin*), for the defendant.

Before: Saad, P.J., and Kelly and Bandstra, JJ.

Bandstra, J. Plaintiff appeals as of right an order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) (claim is barred because of immunity granted by law). Plaintiff's cause of action stems from a November 17, 1995, slip and fall on an ice- and snow-covered sidewalk in front of apartments owned and operated by defendant. Defendant moved for summary disposition, alleging that it was immune from suit on the basis of MCL 691.1407(1); MSA 3.996(107)(1). Plaintiff argued that defendant was precluded from raising a governmental immunity defense. The trial court ruled that defendant was entitled to raise this defense and granted its motion for summary disposition. We affirm.

In 1969, defendant entered into an annual contributions contract with the federal Department of Housing and Urban Development (HUD). The contract prohibited defendant from raising the defense of govern-

mental immunity when sued in tort.[1] In June of 1994, defendant's insurer received a memorandum from HUD, which removed that prohibition and which was "effective immediately."[2]

On appeal, plaintiff asserts that the trial court erred in interpreting the annual contributions contract and the subsequent HUD memorandum. The issue plaintiff raises is whether the 1969 contract was legally modified by the 1994 HUD memorandum. Plaintiff argues that defendant failed to properly assent to the 1994 memorandum, meaning there was no contract modification. The applicability of governmental immunity is a question of law that is reviewed de novo on appeal. *Baker v Waste Management of Michigan, Inc*, 208 Mich App 602, 605; 528 NW2d 835 (1995). For the reasons stated below, we conclude that, in determining the applicability of governmental immunity to this case, we need not address the issue whether the contract was modified through the actions of defendant and HUD.

---

[1] Article III, Section 305(F) of the contract reads:

The Local Authority [i.e., defendant] shall require that each liability insurance policy prohibit the insurer from defending any tort claim on the ground of immunity of the Local Authority from suit.

[2] The memorandum provides:

Effective immediately, the Department of Housing and Urban Development will no longer require PHA-owned insurance entities to attach the Governmental Immunity Waiver Endorsement to general liability and automobile [sic] policies, as required by Insurance Handbook 7401.5. This will allow your organization to take advantage of any state statute granting limited immunity in defense of any claim.

You will soon be receiving revised pages for the Handbook, reflecting this change.

"The law is . . . well settled . . . that the sovereign immunity of the state will obtain unless there is an express statutory waiver thereof." *Bennett v Attorney General*, 65 Mich App 203, 206; 237 NW2d 250 (1975). A state officer or agent has no authority to waive sovereign immunity where such a waiver is not authorized by the Legislature. *McNair v State Hwy Dep't*, 305 Mich 181, 187; 9 NW2d 52 (1943). These rules apply to municipal agencies as well as to the state itself. *Butler v Grand Rapids*, 273 Mich 674, 676; 263 NW 767 (1935). A waiver of immunity may also be valid, however, when the authority to contractually waive governmental immunity is necessarily inferred from the language of a statute. *Mead v Public Service Comm*, 303 Mich 168, 173; 5 NW2d 740 (1942).

MCL 125.696; MSA 5.3056 authorizes municipal housing commissions like defendant to do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government in the purchasing, acquiring, constructing, maintaining, operating, improving, extending, or repairing of housing facilities or the elimination of housing conditions that are detrimental to the public peace, health, safety, morals, or welfare.

One of the "things necessary" for defendant to secure HUD funds is the acceptance of all contract terms that HUD deems appropriate in order to provide federal financial assistance. From 1969 until June of 1994, the HUD prohibition of the use of governmental immunity as a defense, a contract term that defendant was authorized to accept by the statute, constituted a valid waiver of that defense. The validity of that waiver was "necessarily inferred" from the statute's

language, in conjunction with the HUD requirement. *Mead, supra.*

However, once HUD stated "[e]ffective immediately" that a waiver of the governmental immunity defense was no longer required in order to receive funds, defendant no longer had any statutory authority to waive that defense. By issuing the 1994 memorandum, HUD freed defendant from the constraint of the governmental immunity waiver; defendant's promise to waive this defense was no longer necessary for the receipt of federal housing funds. Therefore, MCL 125.696; MSA 5.3056 no longer authorized defendant to continue to waive the immunity defense. Defendant could no longer validly waive the immunity defense and thereby expose the government to liability.

We further conclude that, if an official or agent of the state cannot waive immunity by failing to plead it, *McNair, supra,* defendant could not waive immunity even if, as plaintiff argues, defendant failed to assent to the contract modification. The results of a contrary rule would be the same in either case: a governmental official or agent would expose the state or a political subdivision of the state to liability where none would otherwise exist. See *id.*

We affirm.

SAAD, P.J., concurred.

KELLY, J. (*dissenting*). I respectfully dissent.

The majority decides that although the defendant had the authority to waive sovereign immunity in 1969, and effectively did so for all insurance contracts entered into until the issuance of the June 14, 1994, letter from Michael B. Jannis, General Deputy Assis-

tant Secretary of the Department of Housing and Urban Development (HUD), quoted in footnote 2 of the majority opinion, it then terminates the valid waiver by operation of law, deciding that MCL 125.696; MSA 5.3056 "no longer authorized defendant to continue to waive the immunity defense." But, the memorandum relied on is permissive, not mandatory.

The memorandum states that HUD will no longer require PHA-owned insurance to attach a governmental immunity waiver. The memorandum does nothing to elevate the defendant's duty to prohibit the insurance carrier from claiming governmental immunity. The memorandum does not address or vitiate any part of the 1969 annual contributions contract (ACC) that we are told remained in effect at least throughout the events that are the subject of this law suit. Defendant took no action to take advantage of the permission extended it in the final paragraph. Plaintiff has submitted a letter dated May 21, 1996, over the signature of Joann L. Adams, Acting Director of the office of public housing of HUD, that states that none of the four housing commissions of Jackson, Lansing, Albion, and Battle Creek, "have signed the revised consolidated annual contributions contract form, HUD-53012a, dated July, 1995." This was the provision that permitted the modification allowing assertion of governmental immunity.

I believe, therefore, the 1969 ACC remained in effect and, if the defendant had authority to waive governmental immunity, the authority continued unabated notwithstanding the permissive HUD policy change announced in the June 14, 1994, letter of the HUD assistant secretary.

I would reverse.