BENNETT v DETROIT POLICE CHIEF

Docket Nos. 262124, 262188. Submitted November 14, 2006, at Detroit.
Decided December 19, 2006. Approved for publication February
20, 2007, at 9:05 a.m.

John K. Bennett brought an action in the Wayne Circuit Court
against the Detroit police chief, the Detroit mayor, and the city of
Detroit, alleging that he was wrongfully discharged from his
position as a Detroit police officer for maintaining a website that
contained criticism of the Detroit police chief. All three defendants
filed a motion for summary disposition, arguing that the plaintiff's
claims were barred by governmental immunity and that there can
be no damage claims against municipalities for violations of the
Michigan Constitution. The plaintiff also moved for partial sum-
mary disposition. The trial court, Gershwin A. Drain, J., denied the
defendants' motion with respect to the police chief and the city,
granted their motion with respect to the mayor, and denied the
plaintiff's motion. The police chief and the city appealed as of right
the denial of their motion for summary disposition on governmen-
tal immunity grounds, the plaintiff cross-appealed, and all three
defendants appealed by leave granted the denial of their motion for
summary disposition based on the argument that damage claims
against municipalities for constitutional violations are not viable.
The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The trial court erred by denying summary disposition to the
police chief and the city on governmental immunity grounds. The
police chief had the express authority to suspend the plaintiff
under the city charter, the police department rules, and the
applicable collective bargaining agreement; therefore, both he and
the city were exercising a governmental function and are immune
from liability.

2. The trial court properly granted summary disposition to the
mayor because the plaintiff's evidence that the mayor was in-
volved in his suspension consisted solely of conjecture; therefore,
the plaintiff failed to meet his burden of establishing a genuine
issue of material fact.

Affirmed in part, reversed in part, and remanded for further proceedings.

*Stefani & Stefani, Professional Corporation* (by *Michael L. Stefani* and *Frank J. Rivers*) for the plaintiff.

*Nancy Ninowski, Valerie A. Colbert-Osamuede, Dara M. Chenevert,* and *Grant Ha,* Assistant Corporation Counsel, for the defendants.

Before: WHITBECK, C.J., and SAAD and SCHUETTE, JJ.

PER CURIAM. These consolidated appeals involve the suspension of plaintiff John Kenneth Bennett, a city of Detroit police officer, and his complaint against the city of Detroit, Chief of Police Jerry Oliver (Chief Oliver), and the Mayor of the city of Detroit, Kwame Kilpatrick (Mayor Kilpatrick). The trial court granted summary disposition to Mayor Kilpatrick. However, the trial court denied summary disposition to the city of Detroit and Chief Oliver. The legal issues presented to this Court involve: (1) whether governmental immunity extends to Chief Oliver, under MCL 691.1407(5), and to the city of Detroit, under MCL 691.1407(1); and (2) whether this case involves a genuine issue of material fact with respect to Mayor Kilpatrick's involvement in plaintiff's suspension. We reverse the trial court's order denying Chief Oliver and the city of Detroit's motion for summary disposition based on governmental immunity. However, we affirm the trial court's order granting Mayor Kilpatrick's motion for summary disposition.

## I. FACTS

In November 2002, plaintiff created and registered the internet website www.firejerryo.com. Plaintiff

claims that the purpose of the website was to "provide a forum for himself and others to express their views on matters of public concern."

The website would often feature articles and editorial reviews that were critical of the new chief of police, Chief Oliver. However, at one point, Chief Oliver publicly expressed appreciation and admiration for the website, stating that "[i]t is a very well done site . . . I wish I had that kind of skill working on the official Web site of the police department." The website continued to report negative information about Chief Oliver, Mayor Kilpatrick, and the city of Detroit. The website also provided updates on news concerning the Detroit Police Department, as well as a venue for anyone who accessed the website to log on and share their opinion in one of the website's various blogs.

On July 9, 2003, Chief Oliver suspended plaintiff's duty status with pay, for conduct unbecoming an officer. The alleged conduct was operating a website in violation of the rules and regulations of the Detroit Police Department. On September 18, 2003, Chief Oliver recommended the suspension of plaintiff's duty status without pay to the City of Detroit Board of Police Commissioners (the Board). The Board agreed with Chief Oliver's recommendation, determining that plaintiff's misconduct prevented him from continuing his duties as a police officer.

Plaintiff appealed the Board's decision to grievance arbitration, which upheld the Board's decision to suspend plaintiff's duty status without pay. In October 2003, plaintiff filed a one-count complaint in the Wayne Circuit Court alleging wrongful discharge for the exercise of his constitutionally guaranteed right of free speech in violation of Michigan public policy. In August 2004, defendants filed a motion for summary disposi-

tion based in part on governmental immunity and in part on the contention that Michigan law precludes damage claims against municipalities for violations of the Michigan Constitution. That motion was denied with respect to Chief Oliver and the city of Detroit, but was granted with respect to Mayor Kilpatrick. In November 2004, plaintiff filed his own motion for partial summary disposition, arguing that there is no genuine issue regarding any material fact and that his claim can be decided as a matter of law. That motion was also denied.

Chief Oliver and the city of Detroit now appeal as of right the denial of their motion for summary disposition on grounds of governmental immunity. Plaintiff cross-appeals, asking this Court to reverse the trial court's denial of his motion for partial summary disposition and granting defendants' motion with respect to Mayor Kilpatrick. Defendants also appeal by leave granted the trial court's denial of their motion for dismissal based on the argument that there can be no Michigan Constitutional monetary damage claims against a municipality and its employees. All appeals have been consolidated.

## II. GOVERNMENTAL IMMUNITY

Chief Oliver and the city of Detroit argue that the trial court erred when it denied their motion for summary disposition because they were entitled to governmental immunity. We agree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's order on a motion for summary disposition de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). Further, the "applicability of governmental immunity is a ques-

tion of law that is reviewed de novo on appeal." *Cain v Lansing Housing Comm*, 235 Mich App 566, 568; 599 NW2d 516 (1999).

### B. ANALYSIS[1]

#### (1) CHIEF OLIVER'S GOVERNMENTAL IMMUNITY

Michigan law provides that "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." MCL 691.1407(5). Plaintiff argues that Chief Oliver not only acted outside the scope of his authority in firing plaintiff, but that he also violated the law. We disagree. In making his claim, plaintiff relies heavily on our Supreme Court's decision in *Marrocco v Randlett*, 431 Mich 700; 433 NW2d 68 (1988). In that opinion, our Supreme Court held that

> the highest executive officials of local government are not immune from tort liability for acts not within their execu-

---

[1] As an initial matter, plaintiff argues that this Court does not have jurisdiction over the instant action because the trial court's order was not a "final order" appealable as of right under MCR 7.203(A)(1). However, plaintiff is precluded from relitigating this issue. Plaintiff filed a motion for peremptory reversal on May 16, 2005, and a motion to dismiss on May 24, 2005, based on the same jurisdictional argument. On June 28, 2005, this Court denied both plaintiff's motion for peremptory reversal and plaintiff's motion to dismiss. "Under the doctrine of law of the case, an appellate court's decision concerning a particular issue binds courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *McNees v Cedar Springs Stamping Co (After Remand)*, 219 Mich App 217, 221-222; 555 NW2d 481 (1996). Moreover, "[a] legal question may not be decided differently where the facts remain materially the same." *Id.* at 222. This Court's order denying plaintiff's motion to dismiss based on the jurisdiction of this Court controls the outcome of this issue on appeal. The facts have not changed, and plaintiff's legal question may not now be decided differently.

> tive authority. The determination whether particular acts are within their authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government. [*Id.* at 710-711.]

In *Marrocco*, the plaintiff was a former city attorney who alleged several instances of misconduct directed toward him by the mayor and city treasurer. *Id.* at 702-706. For instance, he alleged that the mayor used his influence to interfere with his reinstatement as city attorney after a leave of absence. *Id.* at 704. In addition, the plaintiff alleged several other occasions when the mayor and the treasurer put pressure on other governmental offices to fire or otherwise harass the plaintiff. *Id.* at 705-706. The plaintiff also alleged that the treasurer harassed him by raising the tax assessment on his home. *Id.* at 706. He was forced to sell the residence, and subsequently the tax was reduced. *Id.*

In reviewing the facts before it, our Supreme Court noted that " 'the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function.' " *Id.* at 707-708 (citations omitted). The Court went on to analyze the city ordinance at issue and determined that the mayor did not have any authority whatsoever to interfere with the plaintiff's reinstatement as city attorney following his leave of absence. *Id.* at 709-710. Concerning the other allegations, the Court noted that there was not enough factual development to determine whether the mayor's and treasurer's acts were within the scope of their executive authority. *Id.* at 710. The case was remanded to the trial court to determine those issues. *Id.* at 711.

Plaintiff insists that the facts of the instant action are analogous to those of *Marrocco* and that Chief Oliver was acting outside the scope of his authority as chief of police when he suspended plaintiff. However, we believe that Chief Oliver was acting within the scope of his express authority, and, therefore, the instant action is distinguishable from *Marrocco*.

The plaintiff in *Marrocco* alleged several instances of harassment by the public official defendants. Here, plaintiff admits that prior to his suspension, he was never contacted about the website. In fact, Gary Brown, the former Deputy Chief of Police, stated in his affidavit that Chief Oliver "checked the website frequently," "found some of the contents humorous," and that the website was "generally only briefly discussed" by the department. Plaintiff contends that the Court in *Marrocco* considered the context and circumstances surrounding the defendants' inappropriate actions in that case. But the *Marrocco* Court did no such thing. Rather, it turned to the language of the local ordinance and, on the basis of the text, determined that the defendants simply did not act within their executive authority. *Marrocco, supra* at 708-710.

Here, there are three sources of local law that expressly grant Chief Oliver the authority to suspend plaintiff: the Detroit City Charter, the Detroit Police Department rules and regulations, and the collective bargaining agreement between the city of Detroit and the Detroit Police Officers' Association. All three contain provisions expressly stating that the chief of police has the authority to suspend police officers from duty.

Article 7, Chapter 11, § 7-1106 of the Detroit City Charter states, in relevant part: "The chief of police is the chief executive officer of the police department and shall . . . [h]ire, promote, commend, transfer, and disci-

pline employees of the department; have authority to suspend and discharge employees of the department under section 7-1107...."

Section 7-1107 then states that "[t]he chief of police may discharge or indefinitely suspend any employee for a major offense." While it does not define "a major offense," it does state that the chief of police, along with the board, "shall adopt a manual of rules ... [which] shall define categories of major and minor offenses and shall set forth the maximum and minimum penalties for each offense."[2]

A second source, the Detroit Police Department manual, states:

> When deemed necessary for the preservation of order or efficiency, a supervisory officer may suspend any subordinate from duty prior to disciplinary action or Trial Board .... Suspensions prior to disciplinary action are strictly for the purpose of preservation of order or efficiency of the department, and are not considered, nor are they to be used, as an instrument of discipline.

The Police Department manual also states that "[p]rior to any administrative hearings, the chief of police may order a member charged with a major offense suspended without pay."

The third source of Chief Oliver's authority is outlined in the collective bargaining agreement between the city of Detroit and the Detroit Police Officers' Association. That agreement expressly grants the chief of police, as a department head, the authority to suspend an officer for just cause.

---

[2] Further, the manual provides a list of minor violations that may be heard at a Commander's Action, which means violations under which "all commanding officers are authorized to conduct disciplinary proceedings .... For the purpose of this directive, a commanding officer is defined as any member holding the rank of inspector or above."

Therefore, we conclude that Chief Oliver was entitled to governmental immunity from plaintiff's tort claim, and the trial court erred in denying his motion for summary disposition.

### (2) CITY OF DETROIT'S GOVERNMENTAL IMMUNITY

Our Supreme Court has held that "[a]bsent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function." *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003), citing MCL 691.1407(1). "A governmental function is 'an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law.' " *Id.*, quoting MCL 691.1401(f).

Plaintiff's argument that the city of Detroit was not engaged in exercising a governmental function relies solely on the assumption that Chief Oliver was not engaged in exercising a governmental function when he suspended plaintiff. However, as previously discussed, Chief Oliver exercised a governmental function when he suspended plaintiff.

Plaintiff asserts that under *Cranford v Wayne Co Sheriff*, unpublished opinion per curiam of the Court of Appeals, issued May 25, 2001 (Docket No. 218859), a governmental agency is not entitled to governmental immunity if its employees acted outside the scope of their authority. However, *Cranford* is an unpublished case; therefore, it is not binding on this Court. MCR 7.215(C)(1); *Beyer v Verizon North, Inc*, 270 Mich App 424, 431; 715 NW2d 328 (2006). Further, *Cranford* is distinguishable from the instant action.

As defendants correctly assert—and plaintiff admits—a city's operation of a police department is a governmental function. Without more, plaintiff simply

does not have a cause of action that will survive defendant city of Detroit's governmental immunity.[3] Therefore, we conclude that the city of Detroit was entitled to governmental immunity from plaintiff's tort claim, and the trial court erred in denying its motion for summary disposition.

### III. NO GENUINE ISSUE OF MATERIAL FACT AS TO MAYOR KILPATRICK'S INVOLVEMENT IN PLAINTIFF'S SUSPENSION

Plaintiff contends that the trial court erred in granting summary disposition to Mayor Kilpatrick on the ground that plaintiff failed to show a genuine issue of material fact under MCR 2.116(C)(10). We disagree.

#### A. STANDARD OF REVIEW

This Court reviews a trial court's order on a motion for summary disposition de novo. *Beaudrie, supra* at 129. When deciding a motion for summary disposition, a court must consider all evidence submitted in the light most favorable to the nonmoving party, *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004), and all reasonable inferences are to be drawn in favor of the nonmovant, *Scalise v Boy Scouts of America*, 265 Mich App 1, 10; 692 NW2d 858 (2005).

---

[3] We note that even if we were to find that defendants are not entitled to governmental immunity, we would, nonetheless, reverse the trial court's order denying defendants' motion for summary disposition. No matter how plaintiff attempts to couch his complaint as a claim for a *violation of public policy* as sounding in the Michigan Constitution, it is evident that his grievances, and thus his requested relief, are based on an alleged *violation of the Michigan Constitution itself*. And our Supreme Court has held that there is no cause of action for damages against entities other than the state for a violation of state constitutional rights. *Jones v Powell*, 462 Mich 329, 335-337; 612 NW2d 423 (2000). Therefore, as defendants point out, there can be no claim for damages for a violation of the Michigan Constitution.

"Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ. *Allstate Ins Co v Dep't of Mgt & Budget*, 259 Mich App 705, 709-710; 675 NW2d 857 (2003).

### B. ANALYSIS

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Maiden, supra* at 120.

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden, supra* at 120, citing MCR 2.116(C)(10) and (G)(4).]

Mere conclusory allegations that are devoid of detail are insufficient to demonstrate that there is a genuine issue of material fact for trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996).

"A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Maiden, supra* at 121. Here, plaintiff simply did not offer anything more than conjecture regarding Mayor Kilpatrick's involvement in his suspension, as indicated by this passage from the plaintiff's appellate brief, which does nothing more than speculate: "It defies reason to suggest that the Mayor did not find Bennett's very public criticism of his

administration on the website to be very annoying . . . [or] to suggest that Oliver would make the unprecedented move of appearing at midnight roll-call . . . to suspend Bennett without the prior direction and approval of the Mayor."

While it is true that the trial court must "consider[] affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties," the nonmoving party may not rely on mere allegations or denials, but must set forth specific facts that show that a genuine issue of material fact exists. *Maiden, supra* at 120. While plaintiff here *alleged* improper conduct on the Mayor's part, plaintiff set forth no specific facts that show a genuine issue of material fact.

In addition, plaintiff relied on an affidavit from former Deputy Chief Brown, which explains that as head of Internal Affairs, he was called out three or four times a week in the middle of the night. Brown also stated that Chief Oliver had three young children and generally did not travel to the precincts in the evenings. Brown further declared that the only time Chief Oliver ever called Brown out in the middle of the night involved an order from the Mayor. However, the affidavit itself qualifies these statements:

> *Based on my knowledge of the Detroit Police Department and my personal working relationship with Chief Oliver,* the only thing that would prompt the Chief to show up at midnight to suspend Officer Bennett would be an urgent sounding telephone call from the Mayor himself or from Christine Beatty.

As defendants correctly point out, Brown is attesting here to nothing more than a *theory* of what *could* be the truth. The affidavit is unsupported by fact and amounts to mere conjecture. In *Libralter Plastics, Inc v Chubb Group of Ins Cos,* 199 Mich App 482; 502 NW2d 742

(1993), this Court acknowledged that "[c]ircumstantial evidence may be sufficient to establish a case. However, parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Id.* at 486 (internal citations omitted). This Court went on to define "conjecture" as "simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." *Id.*

Plaintiff's evidence in this case, with respect to Mayor Kilpatrick's involvement in his suspension, is merely one possible explanation of what events may have occurred. There is simply no evidence, direct or circumstantial, that Mayor Kilpatrick was involved with plaintiff's suspension. Plaintiff did not meet his burden of establishing a genuine issue of material fact for trial.

Even if plaintiff could establish a genuine issue of material fact with respect to the Mayor's involvement, Mayor Kilpatrick would enjoy the same governmental immunity as do Chief Oliver and the city of Detroit. It is undisputed that at the time of the incident, Mayor Kilpatrick was the Mayor of the city of Detroit, which qualifies him as an elective executive official under MCL 691.1407(5). As chief executive of the city of Detroit, Mayor Kilpatrick has the authority to terminate or suspend employees. Therefore, even if the Mayor took some form of action against plaintiff, of which there is no evidence, he was involved in a governmental function on behalf of the city of Detroit at the time of the alleged acts and is therefore immune from plaintiff's tort allegations.[4]

---

[4] Plaintiff also argues that Mayor Kilpatrick is vicariously liable for Chief Oliver's actions under the doctrine of respondeat superior. Under

Therefore, we reverse the trial court's order denying Chief Oliver and the city of Detroit's motion for summary disposition based on governmental immunity and remand this case for entry of a judgment in their favor. In addition, we affirm the trial court's order granting defendant Mayor Kilpatrick's motion for summary disposition.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

---

that doctrine, the master is responsible to third parties for wrongful acts committed by the servant. *Rogers v J B Hunt Transport, Inc*, 466 Mich 645, 650-651; 649 NW2d 23 (2002). This argument is flawed. First, the issue of vicarious liability was not raised before the trial court. Therefore, it has not been preserved for appeal. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Second, as discussed earlier, when defendant Chief Oliver suspended plaintiff, he was not committing a wrongful act. Rather, he was acting squarely within the scope of his authority as chief of police of the city of Detroit.