# STATE OF MICHIGAN

# COURT OF APPEALS

STOCK BUILDING SUPPLY, LLC,

        Plaintiff,

v

CROSSWINDS COMMUNITIES, INC.,
CROSSWINDS QUALITY HOMES, INC.,
CREATIVE LAND DESIGN, INC., CHARTER
OAK HOMES, HAWKER DEVELOPMENT,
BERNARD GLIEBERMAN, G & M BUILDING
COMPANY, LAVA MASONRY
CORPORATION, CAPPY HEATING & AIR
CONDITIONING, SMEDESON STEEL &
SUPPLY, SMEDE SON STEEL & SUPPLY,
DETROIT BUILDING MATERIALS,
REPUBLIC BANK, FLAGSTAR BANK, NIRAV
SHAH, BANK OF ANN ARBOR, CREATIVE
MORTGAGE LENDING, INC., LUCIA
ZAMORANO, SUSAN SWIDER, ETON
STREET STATION II, FIFTH THIRD BANK,
FIFTH THIRD MORTGAGE MICHIGAN,
PAULA CHRISTIAN KLIGER, PAUL M.
KLIGER, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INDYMAC
BANK, RAVIPAL S. BHATTI, COUNTRYWIDE
HOMES LOANS, INC., MICHIGAN STATE
UNEMPLOYMENT AGENCY, MICHIGAN
STATE HOMEOWNER CONSTRUCTION
LIEN, G & M GUTTER COMPANY, AR
KRAMER COMPANY, DICOMO
CONSTRUCTION, HITCHINGHAM BUILDER,
MASTERBRAND CABINETS, STRATHMORE
FINANCE COMPANY, INC., and
HITCHINGHAM DEVELOPMENT,

        Defendants,
and

CHURCH & CHURCH, INC., d/b/a CHURCH'S

FOR PUBLICATION
September 13, 2016
9:00 a.m.

No. 325719
Oakland Circuit Court
LC No. 2008-092922-CH

-1-

LUMBER YARDS, and CHURCH'S BUILDER
WHOLESALE,

                    Defendants/Cross-Plaintiffs/Third
                    Party Plaintiffs-Appellants,

v

HITCHINGHAM DEVELOPMENT, CO.,

                    Defendant/Cross-Defendant,
and

JP MORGAN CHASE BANK, NA, HOWARD
HANSON III, CATHERINE B. HANSON, U.S.
BANK, MICHAEL COLEMAN [sic], BANK OF
AMERICA, HONG DOAN, WILLIAM
DAVIDSON, and LAURA DAVIDSON,

                    Third Party Defendants-Appellees.

---

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

STEPHENS, J.

In this receiver action, third party plaintiffs Church & Church, Inc., d/b/a Church's Lumber Yards, and Church's Builder Wholesale (collectively "Church") appeal as of right the trial court order granting summary disposition under MCR 2.116(C)(10) to third party defendants JP Morgan Chase Bank, Bank of America, U.S. Bank, Hong Doan, Howard Hanson III, Catherine B. Hanson (the Hansons), Michael Coleman, William Davidson and Laura Davidson (the Davidsons), and denying Church the same. We affirm.

## I. BACKGROUND

Church was one of many contractors that were hired by Crosswinds and Hitchingham Development Company, L.L.C. (Hitchingham) to construct the Eton Street Station II condominium project in Birmingham, Michigan. The project was funded by a $13,201,800 loan from Citizens Bank[1] that was secured by a mortgage on the entire project. Church provided supplies to Hitchingham for work performed on Units 60 through 68 of the Eton Street project. This resulted in Church asserting construction liens on those units. Church also performed work

---

[1] The loan was originally borrowed from Republic Bank, Citizens Bank's predecessor-in-interest.

on units 24, 30, 72, and 73. Church was provided with four separate mortgages for that work in the amount of $20,000 each.

Litigation in this case began in July 2008 when contractor Stock Building Supply (Stock) sued Hitchingham, its guarantor Bernard Glieberman, and Crosswinds, after Crosswinds and Hitchingham defaulted on their contract to pay Stock for construction services on the Eton Street project. Stock initiated an action to foreclose on its construction liens and to notify the court of the priority of its interests in the project. Stock's complaint included several other contractors, including Church, as parties that might have had an interest in the condominium project. Church filed its cross and counterclaim for damages on August 26, 2008, seeking recompense for its liens and mortgages. In September 2008, Citizens Bank, as senior mortgage holder, filed a cross-complaint requesting foreclosure of all mortgages on the project, including those mortgages belonging to Church for units 24, 30, 72, and 73. Citizens Bank also moved the trial court to appoint O'Keefe & Associates (O'Keefe) as a receiver to complete the construction and sale of the Eton Street project. On October 15, 2008, the trial court entered an order for O'Keefe to act as receiver that made O'Keefe the fiduciary for all parties interested in the property.

At issue in this case are the sales of condominium units 24, 30, 72, and 73 between July 2009 and August 2010. In July 2009, O'Keefe reported to the trial court that it received an offer to purchase Unit 24. On July 15, 2009, the trial court entered an order approving the sale that stated the property was to be conveyed "free and clear of all claims, liens and encumbrances without redemption periods, with the proceeds received therefrom to be distributed in accordance with the same priorities as held prior to consummation of such sales." Church's attorney signed the order without objection. The property was conveyed by fiduciary deed on August 18, 2009. In September 2009, Church entered into a confidential settlement agreement with Citizens Bank where Church agreed to extinguish its liens on units 60 through 68 in exchange for $55,000. The last clause of the settlement agreement stated "[i]t is expressly understood that this Agreement shall have no effect on the [Church] Mortgages, which shall remain in full force and effect." Following that settlement, the trial court entered a stipulated order dismissing Church from the case with prejudice.

Thereafter, for each unit sold in the condominium project, including Units 30, 72, and 73, O'Keefe presented an offer to purchase to the trial court and the trial court entered an order approving each sale and permitting O'Keefe to proceed. Every order contained language that the sale was "free and clear of all claims, liens, and encumbrances without redemption periods, with the proceeds received therefrom to be distributed in accordance with the same priorities as held prior to consummation of such sales." Church was provided notice of the orders permitting the sales of the units and the distribution of the sale proceeds from each property to Citizens Bank as senior lienholder. Church did not challenge the sales until nearly three years later on September 11, 2013, when it moved the trial court to reopen the case, arguing that it still maintained mortgages on Units 24, 30, 72, and 73.

Church asserted that the settlement agreement between it and Citizens Bank explicitly stated that the mortgages on the four units were still in full force and effect and that it never foreclosed on those mortgages or voluntarily discharged them. Citizens Bank filed an opposing brief, arguing that Church's motion was untimely because the disputed units were sold more than three years earlier. Additionally, Citizens Bank argued that it was entitled to the proceeds from

-3-

the sales of the units because it held the senior mortgage and had not been fully recompensed for that mortgage. The trial court issued an order on October 10, 2013, that: 1) granted Church's motion to reopen the case; 2) ordered Church to file a separate motion to amend its counter and cross-complaint to add the parties now in interest to those properties; and 3) ordered Church and Citizens Bank to brief whether the orders approving the sales free of liens and encumbrances extinguished the mortgages held by Church.

Church's motion and brief, filed December 19, 2013, maintained that its mortgages were not discharged and additionally, argued that the trial court lacked authority to discharge a mortgage other than through foreclosure. Church moved the trial court to permit it to amend its complaint to include foreclosure of Units 24, 30, 72, and 73. In the proposed amended complaint, the purchasers and mortgagees of units 24, 30, 72, and 73 were added as third party defendants. Citizens Bank opposed the proposed amendment as futile, again asserting that the trial court had granted authorization to permit sales free and clear of all liens and encumbrances, including mortgages, under the Construction Lien Act, MCL 570.1101, *et seq.*, specifically MCL 570.1123. On January 31, 2014, the trial court entered an order permitting Church to amend its counter and cross-complaint to include foreclosure of the four units, and to add the parties in interest to those units.

On September 30, 2014, Church filed its motion requesting MCR 2.116(C)(10) summary disposition and judicial foreclosure of the Units under MCL 600.3115. Church asserted that the case was factually undisputed, and that the trial court only needed to determine whether its previous orders had discharged Church's mortgages on the subject units. Church argued that because the orders never mentioned the mortgages, the settlement agreement explicitly stated that the mortgages would remain, and there being no statutory or case law providing the trial court, via a receiver, the authority to judicially extinguish the mortgages, summary disposition was required in Church's favor.

Third party defendants, JP Morgan Chase Bank, Bank of America, U.S. Bank, Hong Doan, the Hansons, and Michael Coleman jointly filed their own motion for summary disposition under MCR 2.116(C)(10).[2] Therein, they argued that the mortgages were extinguished upon the entry of the trial court's encyclopedic and unambiguous orders approving the sales. They asserted that the trial court had power to discharge the mortgages via a receiver sale pursuant to MCL 570.1123(2) and that Church's claims should be barred by the doctrine of laches because Church's three-year delay in asserting any rights prejudiced them. Lastly, the third party defendants claimed that Church's foreclosure action was an impermissible collateral attack on the trial court's previous orders approving the sale of each unit. The Davidsons filed a brief adopting the arguments of the other third party defendants and asserting summary disposition was required under MCR 2.116(C)(10) in their favor for the same reasons just discussed.

On December 17, 2014, the trial court heard the cross-motions for summary disposition. To start, the trial court indicated its belief that the crux of the case relied on the power granted to

---

[2] The Davidsons did not join in this motion.

the trial court by MCL 570.1123(2). The parties agreed that even after the sales by the receiver, Citizens Bank's senior mortgage was still not satisfied. The parties differed, however, on their reading of the statute. The parties argued consistent with their briefs and the trial court took the motions under advisement.

On January 9, 2015, the trial court issued an order granting the third party defendants summary disposition and denying Church's motion after having determined under MCR 2.116(C)(10) that no genuine issue of material fact existed regarding whether the orders approving the sale of Units 24, 30, 72 and 73 discharged Church's mortgages. The court held that the clear language of its orders and the declaration of O'Keefe that the intent of the language "free and clear of all claims, liens and encumbrances" was to include Church's mortgages, established that Church's mortgages were included in the orders. It also held that MCL 570.1123(2) granted the court authority to extinguish a mortgage via a receiver sale because the statute allowed the court to order a sale of properties "on other terms and in a manner as directed by the court." The court also found that the foreclosure action was barred by the doctrine of laches.

## II.  STANDARD OF REVIEW

The trial court granted summary disposition under MCR 2.116(C)(10). "This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition under MCR 2.116(C)(10) is proper where there is no "genuine issue regarding any material fact." *Id*. "A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). "While it is true that the trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, the nonmoving party may not rely on mere allegations or denials, but must set forth specific facts that show that a genuine issue of material fact exists." *Id*. at 318. Equitable issues are reviewed de novo, including equitable defenses such as laches. See *Michigan Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992).

Resolution of this case also involves interpretation of a provision of the Construction Lien Act. We review de novo questions of statutory interpretation and the proper application of statutes. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). This Court addressed the proper method of statutory interpretation in *In re Harper*, 302 Mich App 349, 354-355; 839 NW2d 44 (2013):

> The "primary goal" of statutory interpretation "is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*,

490 Mich 239, 246–247; 802 NW2d 311 (2011). A statutory provision must be read in the context of the entire act, and "every word or phrase of a statute should be accorded its plain and ordinary meaning." *Krohn v Home–Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). When the language is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002) (quotation marks and citation omitted). Only when the statutory language is ambiguous may a court consider evidence outside the words of the statute to determine the Legislature's intent. *Sun Valley Foods Co v Ward*, 460 Mich. 230, 236; 596 NW2d 119 (1999). However, "[a]n ambiguity of statutory language does not exist merely because a reviewing court questions whether the Legislature intended the consequences of the language under review. An ambiguity can be found only where the language of a statute, as used in its particular context, has more than one common and accepted meaning." *Papas [v Michigan Gaming Control Bd*], 257 Mich App [647,] 658; 669 NW2d 326 [(2003)].

## III. ANALYSIS

Resolution of this case requires two inquiries: whether the trial court had the power to discharge Church's mortgage via a sale by a receiver, and second, whether the language of the court's orders selling the property "free and clear of all claims, liens, and encumbrances" included Church's mortgages.

The question of whether a trial court is permitted to discharge mortgages pursuant to a sale by a receiver of encumbered property is one of first impression. Third party defendants assert that the power of the trial court to do so is inherent under the common law, and also vested in MCL 570.1123(2). Church argues that no such authority exists.

MCL 570.1123(2) provides:

The receiver may petition the court for authority to sell the real property interest under foreclosure for cash or on other terms as may be ordered by the court. The sale may be by private or public sale and shall be held in the manner directed by the court. A sale under this subsection shall become final upon the entry of an order of confirmation by the court, unless the court allows a period for redemption. The redemption period, if allowed, shall not exceed 4 months.

Our attention is focused on what is meant by "authority to sell the real property interest under foreclosure for cash or on other terms as may be ordered by the court." Church argues that this language did not authorize the court to discharge its mortgages for three reasons. First, Church contends that the statute only grants the right to a receiver to "petition" the trial court to sell the property and is silent regarding the trial court's authority thereafter. Second, Church asserts that the statute requires the property first be foreclosed, before any process in MCL 570.1123(2) may take place. Third, Church insists that the statutory language, "or on other terms as may be ordered by the court," only allowed the court to consider other forms of consideration for the sale.

We resolve these questions based upon the plain language of the statute. *Jesperson v Auto Club Ins Ass'n*, 306 Mich App 632, 641; 858 NW2d 105 (2014), rev'd on other grounds 499 Mich 29 (2016). It is on this basis that we disagree with Church's first assertion that, the statute only relates to the rights of a receiver to petition the court and not to what the court can actually grant. Instead, we conclude that the plain language of the statute contemplates that the court make decisions regarding the sale after the petition is filed including the terms of the sale itself. The first sentence of MCL 570.1123(2), "The receiver may petition the court for authority to sell the real property interest under foreclosure. . ." unmistakably grants the receiver the right to petition the court for authority to sell real property that is under foreclosure. The remainder of the first sentence, as well as the second sentence, clearly refer to how the sale may be accomplished, i.e., by cash, on other terms directed by the court, by private or public sale. The third sentence, "A sale under this subsection shall become final upon the entry of an order of confirmation by the court, unless the court allows a period for redemption," plainly provides for the court to enter an order regarding the sale of real property under foreclosure. This last sentence contemplates that the receiver received an offer to purchase and is returning to the court to have the sale approved. A reviewing court is permitted to "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Perry v Golling Chrysler Plymouth Jeep, Inc*, 477 Mich 62, 65; 729 NW2d 500 (2007). It "may reasonably be inferred" from the third sentence that the legislature intended for the trial court to be able to act on the receiver's petition to sell the property. See *id*.[3]

Church next asserts that the statutory language, "the real property interest under foreclosure" requires that the property for which the receiver petitions the court for authority to sell must already be foreclosed. Church argues that judicial foreclosure is governed by MCL 600.3101, *et seq.* and cannot be accomplished through subsection MCL 570.1123(2) of the Construction Lien Act. Church contends that a judgment of foreclosure was not entered for any of the Units at issue here prior to a receiver being appointed. We disagree with Church's reasoning and conclusions.

The plain language of the statute clearly states that it pertains to the sale of "the real property interest *under* foreclosure . . ." MCL 570.1123(2) (Emphasis added). Notably, the statute does not state, "the real property interest *foreclosed*" or "the *foreclosed* real property," meaning that the lien foreclosure claim must not have resulted in a judgment of foreclosure prior to the appointment or action by a receiver. Where the language is clear and unambiguous this Court must enforce the language of the statute as written. See *In re Harper*, 302 Mich App at 354-355. A judgment of foreclosure was not required prior to the appointment of a receiver because this case was brought by a lien claimant under the Construction Lien Act, which allows

---

[3] In this case, it would make no sense for the court to confirm the sale of a property that it did not grant in the first instance. See *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999) ("[S]tatutes must be construed to prevent absurd results...."); See also *K Mart Corp v Cartier, Inc*, 486 US 281, 324 n 2; 108 S Ct 1811; 100 L Ed 2d 313 (1988) (Scalia, J., concurring in part and dissenting in part) ("[I]t is a venerable principle that a law will not be interpreted to produce absurd results.").

the sale of real property under lien foreclosure either by a sale on foreclosure or a sale by receiver. MCL 570.1123(3). Church's focus is entirely misplaced on its own mortgages and whether those were being foreclosed. However, this litigation began with a complaint by Stock for foreclosure on its construction liens and was resolved on Citizens Bank's cross and counter-complaint for foreclosure on its mortgage by receivership sales conducted according to the orders of the court approving the sales. While it is plain that MCL 570.1123(2) requires the property being sold be under foreclosure, that premise was satisfied in this case, as Citizens Bank was in the process of foreclosure when the trial court ordered the receiver to sell the subject properties. Thus, we conclude that the plain language of the statute requires only that the subject property be under a foreclosure, and that MCL 570.1123 permits the trial court to grant a petition for sale brought by an appointed receiver.

Next, Church argues that the statutory language, "or on other terms as may be ordered by the court," only allowed the court to consider other forms of consideration for the sale and did not grant the court with authority to discharge Church's mortgages. We conclude otherwise. Once again, this Court must turn to the language of the statute. See *In re Harper*, 302 Mich App at 354-355. "The receiver may petition the court for authority to sell the real property interest under foreclosure for cash or on other terms as may be ordered by the court." MCL 570.1123(2). The precise language at question here is "or on other terms." MCL 570.1123(2). The statute, however, does not define what it means by "or on other terms" neither is there any punctuation that would aid our interpretation of the phrase. In this case, it is proper to turn to other sources to define terms in the statute. *In re Casey Estate*, 306 Mich App 252, 260; 856 NW2d 556 (2014); *Anzaldua v Neogen Corp*, 292 Mich App 626, 632; 808 NW2d 804 (2011) ("Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions.")

The competing analyses here are either: 1) the "or" in the statute refers back to "cash" and results in a discussion of consideration permitted for the sale of property, or 2) the "or" refers back to "authority to sell the real property interest under foreclosure for cash," and results in a discussion about what terms the trial court can place on the sale. "The word 'or' is a disjunctive term indicating a choice between alternatives." *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co*, 313 Mich App 113, 124; 881 NW2d 120 (2015) quoting *Jesperson*, 306 Mich App at 643; *Hunt v Drielick*, 496 Mich 366, 375; 852 NW2d 562 (2014) citing *Mich Pub Serv Co v City of Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949) ("stating that the word 'or' is used as 'used to indicate a disunion, a separation, an alternative' "). We conclude that a plain reading of the statute supports the second option. Subsection (2) of the statute is entirely devoted to the process of selling the real property under foreclosure.[4] Also, the subject of the sentence at issue is the petition to sell, not the consideration for the sale. The statute clearly states, in terms that are not exhaustive, the conditions under which the sale may take

---

[4] In contrast, when plainly read, subsection (1) concerns a receiver's preparation of the real property for sale, i.e. completing construction; subsection (3) concerns the purchase of the real property; and subsection (4) concerns the property interests transferred upon consummation of the purchase of the real property. MCL 570.1123.

place. We see no reason why the order's provision that the Units be sold "free and clear of all claims, liens, and encumbrances," could not be considered "other terms" by which to sell the property under the statute. To accept Church's interpretation would mean that the trial court's authority was limited to only determining what consideration was acceptable for the sale of property in receivership. This line of reasoning would also be contra to the defined scope of a receiver's authority as granted by either law or court order. MCR 2.622.

There was evidence submitted in the trial court that it was common practice for receivers in the Metro Detroit area to request and be granted authority to sell distressed properties free and clear of all liens or encumbrances. There is no rule or statute however, that specifically grants trial courts power to order, through a receivership, sale of property under foreclosure free from all liens and encumbrances. Thus far, the issue has evaded review. See e.g., *Workers' Compensation Agency Dir v MacDonald's Industrial Prod, Inc*, 305 Mich App 460, 464; 853 NW2d 467 (2014) (issues on appeal did not challenge the circuit court's grant of "permission to sell the property free and clear of mortgages, liens, and other encumbrances . . ."). A review of case law from other jurisdictions however, lends support for the proposition that a trial court should not authorize the sale of property free and clear of all liens unless the proceeds of the sale would be applied to the liens.[5] Church's mortgages were among many encumbrances on the Eton Street project. The senior lienholder however, was Citizens Bank, having mortgaged the entire project in excess of 13 million dollars. It was also Citizens Bank that advanced funds to O'Keefe to complete construction improvements on the project to make the sale of the Units viable. Each of the court's orders approving sale of the Units provided that the proceeds received from the sales would "be distributed in accordance with the same priorities as held prior to consummation of such sale." It is undisputed that even after all the units in the project were sold, Citizens Bank's mortgage remained unsatisfied and therefore, as a junior lienholder, Church would not in any event have received any of the proceeds. Under these circumstances, we conclude that the court's orders of sale free of all liens and encumbrances were a proper exercise of authority under MCL 570.1123(2).

We next consider whether the trial court properly determined that its orders discharged Church's mortgages. Church's sole argument that its mortgages were not included in the court's order language, "free and clear of all claims, liens and encumbrances," is that the trial court referred only to "liens" and mortgages are not liens. We find this argument to be entirely without merit. Under Michigan law, a mortgage "*is* a lien on real property intended to secure performance or payment of an obligation." *Prime Fin Services LLC v Vinton*, 279 Mich App 245, 256; 761 NW2d 694 (2008) (emphasis added); *McKeighan v Citizens Commercial & Savings Bank of Flint*, 302 Mich 666, 670; 5 NW2d 524 (1942). Black's Law Dictionary (10th

---

[5] *Melrose v Industrial Associates,* 136 Conn 518; 72 A2d 469 (1950); *First Nat Bank v Powell Bros & Sanders Co*, 128 La 961; 55 So 590 (1911); *Pemberton Lumber & Millwork Industries, In. v Wm G Ridgway Const Co*, 38 NJ Super 383; 118 A2d 873 (1955); *DeAngelis v Newman*, 350 Pa Super 536; 504 A2d 1279 (1986); *McIlhenny v Binz*, 80 Tex 1; 13 SW 655 (1890), writ dismissed, 145 US 641; 12 S Ct 982; 36 L Ed 854 (1892); *Chapman v Schiller*, 95 Utah 514, 83 P2d 249.

Ed), also defines a "mortgage lien" as "[a] lien on the mortgagor's property securing the mortgage." We conclude that the word "all" in the court's orders is dispositive and therefore, included Church's mortgages. "[T]here is no broader classification than the word 'all.'" *Skotak v Vic Tanny Intern, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994). "In its ordinary and natural meaning, the word 'all' leaves no room for exceptions." *Id*.[6] We also consider the placement of the word "all" before "claims, liens and encumbrances" as support that the court intended all burdens against the Units be included.

Given our disposition, that the trial court had authority to order receivership sales that extinguished Church's mortgages, we affirm the trial court's determination that no genuine issue of material fact exists and conclude that summary disposition was appropriate. Given our disposition, we not address the trial court's and third party defendants' additional grounds for relief.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause
/s/ Kathleen Jansen

---

[6] Furthermore, "[t]he word 'all' is defined, in part, by Random House Webster's College Dictionary (2001) as follows: '**1.** the whole or full amount of . . . **4.** any; any whatever . . . **10.** everything . . . .'" *Schmude Oil, Inc v Dept of Environmental Quality*, 306 Mich App 35, 44; 856 NW2d 84 (2014).