*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON D. GIORDANO,

       Plaintiff-Appellant,

v

WILLIAMS INTERNATIONAL CO., LLC,

       Defendant-Appellee.

UNPUBLISHED
April 25, 2019

No. 342386
Oakland Circuit Court
LC No. 2016-155873-CL

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant in this wrongful employment termination case. We affirm.

## I. BACKGROUND

Plaintiff, a certified aviation mechanic, served as a full-time technician for defendant from September 2007 until defendant terminated him on November 5, 2015. A year later plaintiff sued defendant claiming that it discharged him in violation of public policy because he refused to violate federal laws or regulations. Plaintiff claimed that defendant requested that he violate 14 CFR 43.3(d) (2012) and 14 CFR 43.12 (1982) but he refused and was fired.

Plaintiff alleged that his supervisor, Jeffrey Siedlaczek, asked him to falsify maintenance and repair records in violation of 14 CFR 43.3(d) (2012) by verifying the completion of work that plaintiff did not personally perform or witness being performed and by resubmitting aircraft engine oil samples to determine contaminant levels to obtain more favorable results. Defendant denied that it asked plaintiff to do anything contrary to law or safety requirements. After conducting discovery, defendant moved for summary disposition.

Defendant relied on Siedlaczek's deposition testimony. He testified that plaintiff stamped work of other individuals only when the work plainly indicated what had been performed by others. On occasion he affixed his stamp to a process to indicate that an internal company process requirement was done. Doing so did not violate any Federal Aviation Administration (FAA) regulation. Siedlaczek agreed that intentional falsification of an FAA

required maintenance record would violate FAA regulations but defendant's procedure of "stamping" the various engine processing steps was not subject to any FAA regulation. The log books maintained by defendant when working on an engine pertained to processes internal to defendant's operations and not record keeping governed by or subject to FAA regulations.

Defendant also relied on the affidavit of Frank Smith, another employee, who served as the Organization Designation Authorization (ODA) Holder and as the onsite representative of the FAA. He had responsibility to ensure that defendant complied with all FAA regulations, processes and controls, and the requirements of the ODA manual pertaining to FAA processes and certification. Smith reviewed plaintiff's complaint and opined in his affidavit that plaintiff's allegations lacked accuracy and were incorrect for several reasons, including:

> A. There is no federal law and no FAA regulations governing any documents that are stamped and/or signed off on by technicians performing repair or maintenance work on aircraft engines, including the Process Plans and/or Process Checklists and documents regarding "stretch numbers" and the measurement of possible contaminants in aviation oil.

> B. None of the documents that are stamped by technicians performing repair or maintenance work on aircraft engines, including the Process Plans and/or Process Checklists and documents regarding "stretch numbers" and the measurement of possible contaminants in aviation oil, are regulated under 14 CFR § 43.12. In particular, none of those documents constitute "any record or report that is required to be made, kept, or used to show compliance with any requirement under this part" under 14 CFR § 34.12(a).

> C. Federal law and FAA regulations regarding documentation are directed exclusively to performance criteria for an aircraft engine's return to service. . . . When [an Acceptance Test Procedure] is completed it is documented on the 8130-3 form "Authorized Release Certificate", which certifies that an engine has passed performance tests and is ready to return to service. That is the only document that the FAA requires [defendant] to make, keep, or use to show compliance with 14 CFR § 43.12.

> D. The Repair Station has trained and authorized qualified mechanics to issue the Authorized Release Certificate 8130-3 in accordance with FAA order 8130.21H. [Plaintiff] had nothing to do with any aspect of the Authorized Release Certificate 8130-3.

> E. All of the documents [plaintiff] could or would be allowed to stamp/sign off on, including the Process Plans and/or Process Checklists and documents regarding "stretch numbers" and the measurement of possible contaminants in aviation oil, are internal documents of [defendant], created and maintained by [defendant] for its own purposes, not to comply with federal law or FAA regulations.

Smith also testified that 14 CFR 43.3(d) (2012) did not apply to defendant because it does "not return to service any product under an individual's A&P certificate."

Defendant also offered the expert testimony of Daniel Allison, the current president of an aviation consulting firm and a retiree of the FAA. Allison averred that he reviewed the affidavit provided by Smith and "agree[d] that the information contained therein is true and accurate." Allison indicated that he also reviewed plaintiff's complaint and found that plaintiff misstated the existence and application of federal law and FAA regulations regarding documents and operations at defendant's facility. Allison indicated that 14 CFR 43.3(e) (2012) applied to defendant and that defendant had authorization to approve aircraft for return to service under 14 CFR 43.7(c) and (d), but plaintiff lacked qualification or authorization "to make Return to Service decisions" or "to sign any of [defendant's] return to service documents[.]" Allison concurred with Smith that federal law and FAA regulations relied on by plaintiff did not govern "any documents that are stamped and/or signed off by a basic level technician performing repair or maintenance work," including " 'stretch numbers' and the measurements of possible contamination in the applicable aviation oil tested at [defendant]." Allison confirmed that defendant was required to comply with FAA regulation 14 CFR 43.12 (1982), regarding the completion of Form 8130-3, but that plaintiff lacked the training, qualification, or authorization to complete that form.

Plaintiff opposed defendant's motion. Plaintiff relied on his deposition testimony in which, among other things, he testified that Siedlaczek ordered him to "stamp off" on work in the log books even though he did not perform or observe the work and that Siedlaczek ordered him to falsify data measurements in violation of FAA regulations. Plaintiff asserted that because he refused to engage in illegal and unethical conduct, Siedlaczek placed him on a performance improvement plan and later initiated plaintiff's termination.

The trial court considered the record evidence and granted defendant's motion. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion brought under MCR 2.116(C)(10). *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 198; 893 NW2d 165 (2016) (quotation marks and citation omitted). In *Stock Bldg Supply*, this Court summarized:

> A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition under MCR 2.116(C)(10) is proper when there is no genuine issue regarding any material fact. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules. While it is true that the trial court must consider affidavits, pleadings, depositions, admissions, and other

evidence submitted by the parties, the nonmoving party may not rely on mere allegations or denials, but must set forth specific facts that show that a genuine issue of material fact exists. [*Id*. at 198-199 (quotation marks and citations omitted).]

## III. ANALYSIS

In Michigan, in the absence of a contract, the general rule of at-will employment applies and defines the employment relationship between employers and their employees. *Suchodolski v Mich Con Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982) (citation omitted). Under the general rule of at-will employment, either the employer or employee may terminate the employment relationship with or without cause at any time. *Id*. Our Supreme Court explained in *Suchodolski* that an exception to the general rule has been recognized:

> based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty.
>
> The courts have also occasionally found sufficient legislative expression of policy to imply a cause of action for wrongful termination even in the absence of an explicit prohibition on retaliatory discharges. Such a cause of action has been found to be implied where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. [*Id*. at 695 (citations omitted).]

In *Clifford v Cactus Drilling Corp*, 419 Mich 356, 368; 353 NW2d 469 (1984) (citation omitted) our Supreme Court clarified:

> Of course, it is not this Court's function to legislate employee job security. Nonetheless, the employee does have an interest in protection from discharge based solely on refusal to act in an unlawful manner or attempt to exercise a statutorily or constitutionally conferred right. Likewise, society has an interest in ensuring that its laws and important public policies are not contravened. These interests can be equitably balanced by recognizing an action for retaliatory discharge only when important and concretely articulated public policies are contravened.
>
> * * *
>
> Three elements of a cause of action based on a public policy exception to the employment-at-will rule may be distilled. . . . First, plaintiff engaged in protected activity. The activity's protection may stem either from a constitutional or statutorily granted right or from an obligation favored by statutory policy. Second, plaintiff was discharged. Third, a causal connection exists between the plaintiff's protected activity and the discharge. [*Id*. at 368-369 (citation omitted).]

In *Piasecki v Hamtramck*, 249 Mich App 37, 43; 640 NW2d 885 (2001), this Court held that the defendants were entitled to summary disposition of the plaintiff's claim that she was discharged because she refused to violate the law because the statute cited by plaintiff contained a provision or exception that did not render the release of information a violation of the cited statutory provision relied on by plaintiff for a public policy argument. *Piasecki* stands for the proposition that, where a plaintiff alleges termination against public policy based on the refusal to violate a law, an actual law must exist that would have been violated if the plaintiff acted as required by the employer.

In this case, plaintiff contends that his employer required him to violate FAA regulations; and, when he refused, defendant terminated him in contravention of public policy. To establish his right to relief, plaintiff had to show that the law actually prohibited the conduct that he alleged defendant required him to perform. The unrebutted evidence proffered by defendant, however, established that the FAA regulations on which plaintiff relied did not comprise a law that applied or could be violated by plaintiff's performance of the requested work. Allison and Smith both testified that 14 CFR 43.3(d) (2012) and 14 CFR 43.12 (1982) did not apply to the work defendant requested plaintiff to do. Plaintiff did not have to prove that he or defendant in fact violated the FAA regulations, but he was required to establish that the regulations prohibited the conduct that he refused to perform in order to establish that his termination violated public policy. The record reflects that the paperwork defendant required of plaintiff applied to internal business processes and none of it was required by or governed by federal law or regulation. It is axiomatic that an employer cannot violate public policy by terminating an at-will employee for refusing to perform work that, if done, does not violate any law. In this case, because the conduct requested by defendant did not violate any law, plaintiff's wrongful discharge as against public policy claim failed as a matter of law. Therefore, the trial court correctly granted defendant summary disposition.

We also find no merit to plaintiff's contention that 14 CFR 43.9 (2004) expanded the scope of records subject to regulation under 14 CFR 43.12 (1982). Plaintiff cites no authority that supports this argument. " 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority.' " *Movie Mania Metro, Inc v GZ DVD's, Inc*, 306 Mich App 594, 605-606; 857 NW2d 677 (2014) (citation omitted). Further, the record reflects that Smith's and Allison's testimonies established that no federal law and no FAA regulations governed the internal documentation of which defendant required plaintiff to stamp or sign.

Plaintiff also contends that, because the Whistleblower Protection Act (WPA), MCL 15.362, permits claims based upon suspected violations of law or regulation, by analogy, his termination should have been held as against public policy because he reasonably but incorrectly believed that defendant required him to violate a law or regulation. We reject this argument.

In *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008), this Court explained, that:

> courts may only derive public policy from objective sources, our Supreme Court's enumerated "public policies" in the context of wrongful termination all entail an

employee exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law.

Michigan caselaw does not support the proposition that a plaintiff's subjective and incorrect beliefs have any bearing on the issue whether the employee's termination was contrary to public policy. To have a viable claim, the terminated employee must establish that he exercised an actual right guaranteed by law, executed a duty required by law, or refrained from violating the law. Plaintiff failed to do so in this case. Plaintiff's incorrect understanding of the applicable law cannot serve as the foundation on which to claim that his termination violated public policy. Therefore, the trial court correctly granted defendant summary disposition.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford