*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARRIE TILLER and MICHAEL TILLER,

UNPUBLISHED
July 20, 2023

Plaintiffs-Appellants,

v

No. 360703
Lenawee Circuit Court
LC No. 2002-002882-CK

VERSACUT INDUSTRIES, INC., GERALD
TILLER, and CINDY TILLER,

Defendants-Appellees.

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Plaintiffs, Michael Tiller ("Michael") and Carrie Tiller ("Carrie"), appeal by delayed leave granted[1] the trial court's opinion and order granting, on reconsideration, defendants' motion to enforce a 2003 consent judgment and ordering plaintiffs to convey disputed property, 50% to plaintiffs and 50% to the Estate of Gerald Tiller, as tenants in common. We reverse the trial court order, and remand for entry of an order denying defendants' motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1983, Michael and Gerald Tiller, twin brothers, started a business called Tiller Tool and Die. They expanded their partnership and jointly owned several other properties and businesses, including defendant Versacut Industries, Inc. ("Versacut"). On May 1, 1995, Gerald and Michael took ownership of property in Morenci, Michigan (the "Morenci property"), as joint tenants with full rights of survivorship. The relationship between Gerald and Michael broke down in 1998, which led Michael and Carrie to file an action in the Monroe Circuit Court to dissolve the partnership and distribute the real property owned with Gerald. Those parties resolved their dispute in a settlement agreement that was filed in the Monroe Circuit Court in October 2001.

---

[1] *Tiller v Versacut Indus, Inc*, unpublished order of the Court of Appeals, entered July 21, 2022 (Docket No. 360703).

In the settlement agreement, Michael agreed to convey his 50% interest in Versacut to Gerald. The parties agreed to hold onto the Morenci property and split the rents and expenses. Gerald agreed to lease the 18,000-square-foot building at the Morenci property and pay half the rent to Carrie, to whom Michael had conveyed his interest, and Gerald would receive the other half. The parties also agreed to hold onto property located on Woodville Road in Oregon, Ohio (the "Woodville property") and split the rents. The parties further agreed to sell property they owned on Telegraph Road in Michigan and in Perrysburg, Ohio. Gerald's wife, Cindy, agreed to release any claims to the real and personal properties subject to the agreement and released her dower rights.

In July 2002, Carrie filed this action against defendants for breach of a lease agreement.[2] The parties eventually agreed to a consent judgment that was entered on May 9, 2003. The consent judgment provided that Gerald and Cindy could buy the Woodville property for $116,000, and relinquish any claims they had for fees for heating and air conditioning at the Versacut building at the Morenci property. If Gerald and Cindy did not purchase the Woodville property, Michael and Carrie could purchase the property for $124,000. If neither party purchased the Woodville property, it would be listed for sale for $124,000 and the parties would split the proceeds, with Gerald and Cindy receiving $8,000 more. The consent judgment also contained housekeeping details related to the Morenci property. Paragraph 11 of the consent judgment provided that "[t]ransfer documents will be executed by the parties to properly convey ownership and dower interests as tenants in common," which ultimately led to the instant dispute.

Gerald died on December 21, 2018. On May 2, 2019, plaintiffs sent a letter to Versacut informing it that, upon Gerald's death, ownership of the Morenci property vested exclusively in Michael because he had full rights of survivorship. Plaintiffs informed Versacut that all rent should be paid to Michael and Carrie Tiller.

On January 2, 2020, defendants Cindy and Versacut moved to enforce the 2003 consent judgment. Defendants argued that plaintiffs were obligated to execute a deed whereby the Morenci property was owned by the parties as tenants in common in accordance with the unambiguous terms of the consent judgment. Defendants argued that plaintiffs failed to execute documents that would have reflected that the Morenci property was owned by Carrie and/or Michael and by Gerald and/or Cindy as tenants in common. Defendants asserted that plaintiffs' claim that ownership of the Morenci property vested solely in Michael was inconsistent with the 2003 consent judgment.

In response, plaintiffs argued that the consent judgment did not unambiguously require transfer of the Morenci property. Plaintiffs agreed that the consent judgment required transfer of the Woodville property. But they argued that Paragraph 11, which provided that "transfer documents will be executed by the parties to the property conveying ownership and dower interests as tenants in common," stood alone and did not specify which property transfer documents were to be executed. Plaintiffs argued that this provision was ambiguous and that the court should apply

---

[2] Michael had transferred his interests in the properties to Carrie.

the doctrine of laches to prevent an unfair and unreasonable enforcement of the judgment 20 years later.

The trial court initially ruled that the 10-year limitations period in MCL 600.5809(3) barred defendants from enforcing the consent judgment and dismissed defendants' motion. After defendants moved for reconsideration, however, the trial court agreed that its reliance on that statute was palpable error because the plain language of the statute indicated that it only applied to noncontractual monetary obligations, which defendants were not seeking. Accordingly, the court ordered rehearing on defendants' motion.

Plaintiffs filed a supplemental brief in opposition to defendants' motion to enforce the consent judgment, arguing that the joint tenancy with full rights of survivorship set forth in the Morenci property deed became final and irrevocable when Gerald died. Plaintiffs asserted that the underlying action that brought about the 2003 consent judgment never resulted in an actual partition of property or reformation of the original deed. Therefore, at Gerald's death, ownership of the property vested exclusively in Michael, as the surviving owner, leaving nothing for the trial court to enforce. Plaintiffs argued that defendants' reliance on Paragraph 11 of the consent judgment was misplaced because that provision did not specify what transfer documents needed to be executed, and therefore, it was ambiguous. Plaintiffs further asserted that introduction of extrinsic evidence to determine the parties' intent would prejudice plaintiffs after so much time had passed because key witnesses, such as Gerald and one of the attorneys who help negotiate the consent judgment, had died.

The trial court granted defendants' motion to enforce the consent judgment. The court found that Paragraph 11 of the 2003 consent judgment clearly expressed the parties' intent to transfer the Morenci property so that it would be held as tenants in common. Reading the document as whole, the trial court found that any argument that Paragraph 11 referred only to the Woodville property was untenable. The court also ruled that because the consent judgment was unambiguous, no witnesses were needed to testify regarding the parties' intent. Therefore, the trial court rejected plaintiffs' argument that defendants' motion was barred by the doctrine of laches. The trial court also rejected plaintiffs' argument that the indestructible nature of a joint tenancy with full rights of survivorship prevented enforcement of the consent judgment or specific performance. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to enforce a consent judgment for an abuse of discretion. *Clohset v No Name Corp*, 302 Mich App 550, 558; 840 NW2d 375 (2013). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

"A consent judgment is in the nature of a contract, and is to be construed and applied as such." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). This Court reviews de novo as a question of law the proper interpretation of a contract, including the trial court's determination whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). In ascertaining the meaning of a contract, this Court

gives the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. ANALYSIS

The trial court erred by concluding that the consent judgment unambiguously required the parties to execute transfer documents to convey ownership rights in the Morenci property to the parties as tenants in common. Further, the consent judgment failed to unambiguously destroy Gerald's and Michael's contingent remainders.

It is undisputed that the Morenci property was conveyed to Gerald and Michael in 1995, as joint tenants with full rights of survivorship. A joint tenancy with full rights of survivorship "is comprised of a joint life estate with dual contingent remainders." *Albro v Allen*, 434 Mich 271, 275; 454 NW2d 85 (1990). The dual contingent remainders of the joint tenancy with full rights of survivorship are indestructible. *Id*. at 276. "A cotenant's contingent remainder cannot be destroyed by an act of the other cotenant." *Id*. "Property held as joint tenants with full rights of survivorship automatically passes to the surviving tenant(s) at a tenant's death." *In re VanConett Estate*, 262 Mich App 660, 667-668; 687 NW2d 167 (2004), citing 1 Cameron, Michigan Real Property Law (2d ed), § 9.11, pp 306-307. The theory of survivorship is "that at the moment of death, ownership vests exclusively in the surviving joint tenant or tenants." *Jackson v Estate of Green*, 484 Mich 209, 214; 771 NW2d 675 (2009).

After Carrie filed a complaint for breach of the lease agreement in the current action, she and Michael moved to enforce the settlement agreement in the Monroe County case. The parties resolved both the Monroe County case and the instant case in Lenawee County in a consent judgment entered in this action. The consent judgment provided:

1. Gerald Tiller and Cindy Tiller are hereby added to the case herein as party defendants along with Versacut Industries, Inc.

2. Michael Tiller is hereby added to the case herein as a party plaintiff.

3. Gerald and Cindy Tiller, defendants, shall buy the property located at 2323 Woodville Road, Oregon, Ohio at the price of $116,000.00 and all claims shall be relinquished in regard to the $8,000.00 for the fees for the heating and air conditioning at the Morenci [Versacut] property. They shall have thirty (30) days in which to do a written offer and thirty (30) days in which to close.

4. In the event that Gerald and Cindy Tiller, defendants, do not purchase the property at 2323 Woodville Road, Oregon, Ohio, then in that event, Michael and Carrie Tiller may purchase for the price of $124,000.00. They shall have thirty (30) days after expiration of defendant's thirty (30) day period in which to do a written offer and thirty (30) days in which to close.

5. In the event that neither party purchases the property at 2323 Woodville Road, Oregon, Ohio, the property shall be listed for sale and the net

-4-

proceeds divided between the parties with Gerald and Cindy Tiller receiving $8,000.00 more.

6. The furnace and air conditioning at the Morenci property, if hooked up, will be paid by lessee [Versacut] Industries, Inc.[]

7. Unless modified, replaced or satisfied, the provisions of the Settlement Agreement of October 10, 2001, shall remain in full force and effect, and be enforced under this Consent Judgment.

8. Repairs of waterline leakage are approved by the partnership for General Broach.

9. Grass cutting is approved by partnership.

10. The parties shall continue the current rents and receipts as they are presently doing. In the event additional tenants are secured or additional expenses are incurred, the system shall change accordingly.

11. Transfer documents will be executed by the parties to properly convey ownership and dower interests as tenants in common.

Generally, consent judgments are final and binding upon the court and the parties, and cannot be modified absent fraud, mistake, or unconscionable advantage. *Laffin*, 280 Mich at 517. A consent judgment is treated as a contract and is interpreted as such. *Id.* This Court interprets contracts according to their plain language and enforces them as written. *Id.* "When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015). If a reasonable person could not dispute the meaning of ordinary and plain contract language, unambiguous contracts are not open to judicial construction and must be enforced as written. *Rory*, 473 Mich at 468. "The general rule of contracts is that competent persons shall have the utmost liberty of contract and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Id.* (quotation marks, brackets, and citations omitted).

A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). Whether a contract is ambiguous is a question of law. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 526; 791 NW2d 724 (2010). "Only when contractual language is ambiguous does its meaning become a question of fact." *Id.* at 527. In order to resolve the meaning of an ambiguous contract, the fact-finder may consider relevant extrinsic evidence. *Klapp*, 468 Mich at 469.

In Paragraphs 3, 4, and 5 of the consent judgment, the parties very clearly and with specificity detailed actions the parties were to take regarding the Woodville property. Paragraphs 6, 8, 9, and 10 address housekeeping details, such as which party was responsible for furnace and air conditioning hookup, waterline leakage, grass cutting at the Morenci property, and the

continuation of current rents and receipts. Paragraph 7 provides that "[u]nless modified, replaced or satisfied, the provisions of the Settlement Agreement of October 10, 2021, shall remain in full force and effect, and be enforced under this Consent Judgment." However, nothing in the consent judgment or the settlement agreement expressly contemplates transfer of the Morenci property. On the contrary, the settlement agreement provides "that the parties agree to hold onto the property located at 555 Main St in Morenci, MI splitting the rents and expenses. Said property currently free and clear."

The trial court found that the consent judgment was unambiguous and that Paragraph 11 clearly reflected the parties' intention to transfer the Morenci property to the parties as tenants in common. However, Paragraph 11 merely states that "[t]ransfer documents will be executed by the parties to properly convey ownership and dower interests as tenants in common," without specifying which property this paragraph applies to. The trial court found that the paragraph unambiguously applied to the Morenci property because Paragraph 11 followed Paragraphs 6 through 10, which addressed issues relating to the Morenci property. The trial court also found that Paragraph 11 could not have referred to the Woodville property because it was being sold and there would have been no need to direct the individual or couple who bought that property to own it as tenants in common.

"A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). "Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided." *Id*. In *Klapp*, our Supreme Court considered when relevant extrinsic evidence may be considered to aid in the interpretation of an ambiguous contract. *Klapp*, 468 Mich at 470. Quoting *Edoff v Hecht*, 270 Mich 689, 695-696; 260 NW 93 (1935), the Court explained that extrinsic evidence can be used to interpret an ambiguous contract " 'where the language of the instrument itself taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement.' " *Klapp*, 468 Mich at 470. In addition, " 'a written instrument is open to explanation by parol or extrinsic evidence when it is expressed in short and incomplete terms, or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure, or ambiguous.' " *Id*., quoting *Edoff*, 270 Mich at 695-696.

Again, Paragraph 11 of the consent judgment merely provides that "[t]ransfer documents will be executed by the parties to properly convey ownership and dower interests as tenants in common." As the trial court observed, considering that Paragraph 11 follows four paragraphs that refer to the Morenci property, it could be interpreted as also referring to the Morenci property. However, the paragraph does not clearly name the Morenci property as the parties clearly did in the paragraphs concerning the Woodville property. Indeed, the paragraph does not contain the word "property" to describe what should be conveyed. Nor does it identify the parties to whom the unspecified property is to be conveyed as tenants in common. The parties to the consent judgment were Gerald, Cindy, Versacut, Michael, and Carrie. The paragraph does not clearly express the parties' intent to destroy the rights of survivorship of Gerald and Michael to the Morenci property. The Court's observation in *Klapp*, 468 Mich at 470, that a contract is ambiguous when it is expressed in terms that are short and incomplete, or vague and obscure, fairly describes the content of Paragraph 11, both standing alone and viewed in conjunction with the surrounding paragraphs. Therefore, the trial court erred by finding that the consent judgment

unambiguously required the parties to execute transfer documents conveying ownership in the Morenci property to the parties as tenants in common.

Furthermore, the consent judgment was not adequate to destroy Gerald's and Michael's contingent remainders. Unless Gerald and Michael mutually destroyed the contingent remainders, ownership vested exclusively with Michael upon Gerald's death. This conclusion is supported by this Court's decision in *In re VanConett Estate*, 262 Mich App at 662. In that case, Herbert and Ila VanConett created a contract to make a will and this Court ruled that the beneficiaries of that contract had standing to bring an action to enforce it. *Id*. at 662. Among other property, the VanConetts owned real property with Florence H. VanConett as "joint tenants with full rights of survivorship and not as tenants in common." *Id*. at 667. The defendants argued that the estate converted to a tenancy by the entireties when Florence died; however, this Court held that the VanConetts "continued to hold the property as joint tenants with full rights of survivorship after Florence's death." *Id*. Because property held as joint tenants with full rights of survivorship automatically passed to Herbert upon Ila's death, it was not part of her estate and was not covered by the couple's contract to make a will. *Id*. at 667-668. Therefore, this Court held that the estate had no right to seek its return, even though the VanConetts' will stated that it applied to "all our property, whether owned by us as joint tenants . . . ." *Id*. at 668.

This Court further held that the VanConetts' contract to make a will "did not expressly indicate that the couple wished to terminate their joint tenancy and destroy the survivorship rights attached to it." *Id.* This Court stated that "[n]o authority suggests that merely expressing a desire to end a joint tenancy carries out the task of terminating a joint tenancy with rights of survivorship." *Id*. Therefore, this Court concluded that the VanConetts' contract to make a will did not terminate the survivorship rights of their joint tenancy, the property passed to Herbert immediately at Ila's death, and the estate lacked standing to seek its return to the estate. *Id.*

Likewise, the 2003 consent judgment does not expressly indicate Gerald's and Michael's intentions "to terminate their joint tenancy and destroy the survivorship rights attached to it." *Id*. The trial court rejected plaintiffs' argument that "the indestructible nature of a joint tenancy with full rights of survivorship prevents enforcement of the consent judgment" because the consent judgment was a contract to transfer title of the property. In *In re VanConett Estate*, however, this Court held that even though the VanConetts had a contract to create wills to apply to all of their property, the contract was insufficient to destroy the survivorship rights. *Id*. In this case, if Gerald and Michael had followed through with the consent judgment and mutually executed the documents while Gerald was alive, their mutual action would have destroyed the full rights of survivorship. However, because the parties never changed the ownership of the Morenci property, at the moment of Gerald's death, ownership vested exclusively in Michael, the surviving joint tenant. *Jackson*, 484 Mich at 214. Therefore, the trial court erred by ordering plaintiffs to convey the Morenci property to plaintiffs and to Gerald's estate as tenants in common.

Furthermore, given our conclusion that the 2003 consent judgment is ambiguous regarding its application to the Morenci property, we hold that the trial court erred by rejecting plaintiffs' argument that defendants' motion to enforce the consent judgment was barred by laches.

Equitable issues, including equitable defenses such as laches, are reviewed de novo. *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 199; 893 NW2d 165

(2016). This Court reviews any findings of fact supporting the trial court's equitable decision for clear error. *Twp of Yankee Springs v Fox*, 264 Mich App 604, 611; 692 NW2d 728 (2004). "A finding is clearly erroneous where this Court is left with a definite and firm conviction that a mistake has been made." *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 194-195; 870 NW2d 731 (2015) (quotation marks and citation omitted).

The primary inquiry when applying the doctrine of laches is whether a party's failure to earlier assert his or her claim prejudiced the other party. See *Sylvan Twp v City Of Chelsea*, 313 Mich App 305, 327; 882 NW2d 545 (2015), in which this Court observed:

> Although considerations of timing are important when determining whether laches applies to the facts, laches is not triggered by the passage of time alone. Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. As such, when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay. It is the prejudice occasioned by the delay that justifies the application of laches. [Quoting *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013) (quotation marks and citations omitted).]

Plaintiffs argue that they were prejudiced by defendants' delay in bringing their motion approximately 17 years after entry of the consent judgment because Gerald and one of the attorneys who helped draft the consent judgment had died, thereby depriving them of these key witnesses' testimonies regarding the interpretation of the ambiguous Paragraph 11. The trial court rejected plaintiffs' laches argument because it found that the consent judgment was unambiguous, and therefore, any witness testimony was unnecessary.

In order to determine whether plaintiffs were prejudiced by the delay, we must determine when it was practicable for defendants to assert their claim. *Sylvan Twp*, 313 Mich App 327. It was practicable for defendants to assert their claim that the Morenci property should be conveyed to the parties as tenants in common as soon as the consent judgment was entered and accepted by the trial court. Cindy testified in a deposition that 10 days after the consent judgment was entered, she and Gerald closed on the Woodville property as provided in the consent judgment. It was equally practicable for defendants or plaintiffs to have executed transfer documents for the Morenci property if that was the parties' intention. Paragraph 11 did not charge a particular party with execution of the documents. Any of the parties could have prepared documents to sign. The consent judgment was signed and entered on May 9, 2003, and defendants did not file their motion to enforce the consent judgment until January 2, 2020. Defendants did not assert their claim during the 15 years after the consent judgment was entered and before Gerald died. Cindy testified that she did not know that the Morenci property was not already held by the parties as tenants in common. Now, because of Gerald's death, it is not possible to know whether Gerald understood that he still held ownership of the Morenci property with Michael as joint tenants with rights of full survivorship, or to know Gerald's intent with regard to the further disposition of the Morenci property. Plaintiffs also assert that John Baker, one of the attorneys who helped negotiate the consent judgment, died in 2016. Because the consent judgment is ambiguous, testimony from Gerald and Baker would have aided in the interpretation of the consent judgment. Thus, considering this evidence, and because it was practicable for defendants to assert their claim well

before the deaths of Gerald and Baker, we hold that laches also barred defendants' 2020 motion to enforce the consent judgment.

For the foregoing reasons, we reverse the trial court's order granting defendants' motion to enforce the 2003 consent judgment and ordering plaintiffs to convey the Morenci property to the parties as tenants in common, and remand for entry of an order denying defendants' motion. In light of this decision, it is unnecessary to address plaintiffs' remaining issues on appeal. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood